IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LLOYD N. HAMM, JR.                                                                        PLAINTIFF

v.                                      Civil No. 6:17-cv-06089

DR. CHARLES LIGGETT                                               DEFENDANT

**MEMORANDUM OPINION**

This is a civil rights action filed *pro se* by Plaintiff, Lloyd N. Hamm, Jr., under 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment filed by Defendant, Dr. Charles Liggett ("Dr. Liggett"). (ECF No. 52). Plaintiff filed a Response. (ECF Nos. 59, 60). Defendant filed a Reply. (ECF No. 62). The matter is ripe for consideration.

**I. BACKGROUND**

Plaintiff is currently an inmate in the Arkansas Department of Correction ("ADC"), Ester Unit. This case arises from incidents that occurred while Plaintiff was incarcerated at the ADC, Ouachita River Correctional Unit ("ORCU") in Malvern, Arkansas. Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was involved in a car accident in July 2004. He has suffered from occasional seizures since the car accident. According to Plaintiff, the number of seizures he has each month varies depending upon "what my stress level had been, or what my medication was, or what was going on around me." (ECF No. 52-2, p. 21). He was examined by a neurologist in August 2004, at which time he was prescribed Neurontin for a few months. Once this prescription expired Plaintiff did not take any medication for his seizures for approximately seven years. Sometime in 2011 Plaintiff began taking Neurontin again when he was incarcerated in Lee County, Arkansas, for a parole violation. (ECF No. 52-2, p. 118). Plaintiff's medication was changed from Neurontin

to Tegretol in 2013. (ECF No. 52-2, p. 27). While Plaintiff was incarcerated at the ADC, Randall L. Williams Unit, the drug Topamax was added to his medications. *Id.* at 118.

On June 28, 2016, Plaintiff was transferred to the ORCU where he remained until October 14, 2016. At the time of his transfer, Plaintiff was taking 25 milligrams of Topamax (Topiramate) once a day and 100 milligrams of Tegretol (Carbamazepine) once a day for his seizures. (ECF No. 52-2, p. 106). While at the ORCU, Plaintiff was treated by Dr. Liggett. Although Plaintiff had active prescriptions for both Tegretol and Topamax, Dr. Liggett informed Plaintiff sometime in August 2016 that he would be better off without Tegretol. On September 20, 2016, Plaintiff suffered a seizure and hit his head. Plaintiff was monitored by the nursing staff at the ORCU in the infirmary immediately after the seizure, and the record reflects he was also examined by Dr. Liggett sometime later that day. Plaintiff had no urgent or emergent needs at that time, and he returned to his cell after resting in the infirmary for several hours. Plaintiff was examined again by Dr. Liggett the following day. Plaintiff complained of "cloudy" vision in his right eye.

On October 14, 2016, Plaintiff was transferred from the ORCU to the Randall L. Williams Unit. On or about December 1, 2016, Plaintiff's prescription for Topamax was increased from 25 milligrams each evening to 50 milligrams twice a day. In late December 2016 Plaintiff was referred to the University of Arkansas for Medical Sciences Jones Eye Center for evaluation regarding his complaint of loss of vision in his right eye. Plaintiff was examined on February 14, 2017, and the reports generated by the Jones Eye Center noted that Plaintiff had no obvious abnormalities of the right eye and that no follow-up appointments were required. (ECF No. 52-1, pp. 80-82). Plaintiff was told that his vision would likely come back.

On March 31, 2017, Plaintiff was transferred back to the ORCU. On August 30, 2017, Plaintiff was examined by Dr. James Thomas, an outside neurologist. Dr. Thomas recommended

increasing the dosage of Topamax to 100 milligrams twice a day, and that recommendation was implemented at the ORCU. Dr. Thomas did not recommend or prescribe Tegretol for Plaintiff. Dr. Thomas also recommended an MRI of the brain for Plaintiff.

Plaintiff filed his Complaint on August 31, 2017. (ECF No. 1).[1] He is suing Dr. Liggett in his individual and official capacity. Plaintiff is seeking compensatory and punitive damages, and he asks that Defendant Liggett lose his "privilege to practice medicine anywhere ever under any name." (ECF No. 1, p. 10). Specifically, Plaintiff alleges that Dr. Liggett violated his constitutional right to medical care by:

> "repeatedly refused to refill medications & prescriptions that I have maintained prior to being transferred to the unit… His refusal to refill the medication Tegratal. That I take for pettite mal siezures, & refusal to remove me from outside duty eventually led to me having a severe seizure. During this seizure I hit my head & lost all but the sight of a bright light in my right eye."[2] (ECF No. 1, p. 4).

In accordance with the recommendation of Dr. Thomas, Plaintiff underwent an MRI on October 2, 2017. The MRI report states, "No evidence of intracranial mass or acute abnormality. No findings to explain the patient's seizure disorder." (ECF No. 52-1, p. 116). As of the date of Plaintiff's deposition, January 23, 2018, Plaintiff was taking 100 milligrams of Topamax twice a day. Even on this medication Plaintiff still suffers from "small seizures." (ECF No. 52-2, p. 103).

On April 5, 2018, Dr. Liggett filed the instant Motion for Summary Judgment, arguing that he is entitled to judgment as a matter of law because Plaintiff cannot establish a claim for deliberate indifference to serious medical needs. (ECF No. 52). Defendant has not addressed Plaintiff's official capacity claim.

---

[1] Plaintiff initially named Nurse Dream M. Redic-Young as a defendant. The claims against her were dismissed on February 5, 2018. (ECF No. 40).
[2] The prescriptions Plaintiff alleges that Dr. Liggett refused to fill include seizure medications, a knee brace, and orthopedic arch supports for his shoes. (ECF No. 1). During his deposition, however, Plaintiff testified he is only suing Dr. Liggett based on his failure to prescribe medications for his seizure disorder and the injuries he claims resulted from such failure. (ECF No. 52-2, pp. 36, 41).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

**A. Denial of Adequate Medical Care**

Plaintiff alleges Dr. Liggett was deliberately indifferent to his serious medical needs when he failed to provide him with seizure medication that was previously prescribed at other ADC units. Plaintiff claims because he did not receive the medication Tegretol, he suffered a seizure at the ORCU, hit his head, and now has lost most of the vision in his right eye.

The Eighth Amendment's prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Dr. Liggett acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed. *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1978).

In this case, there is no question that Plaintiff suffers from an objectively serious medical condition – occasional seizures. The question then becomes whether Dr. Liggett's refusal to provide Plaintiff with Tegretol for his seizures constitutes deliberate indifference.

The Eighth Circuit has previously addressed similar facts in *Phillips v. Jasper County Jail*, 437 F.3d 791 (8th Cir. 2006). Phillips had intermittently taken anti-seizure medication following a head injury he sustained several years earlier. When he was first booked into the Jasper County Jail he was prescribed 1,000 milligrams per day of the drug Tegretol to control his seizures. That dosage remained the same when Phillips was moved to the Missouri State Penitentiary. Phillips stopped taking the medication before the state prison discharged him. Several days after his release from the state penitentiary, Phillips was again booked into the Jasper County Jail. The jail's physician reviewed Phillips' case and prescribed 250 milligrams of Depakote, another anti-seizure medication, twice a day. A few months after being re-admitted to the jail, Phillips had a seizure, fell from his bunk and suffered injuries to his head, neck, and spine.

Phillips filed a lawsuit alleging the jail's physician was deliberately indifferent to his medical condition by failing to prescribe the proper medication and failing to monitor his prescription prior to his seizure. The district court granted the doctor's motion for summary judgment finding the doctor was not deliberately indifferent to Phillips' medical needs. In affirming the district court's decision, the Eighth Circuit explained there was no evidence that the doctor knew that prescribing Depakote instead of Tegretol would present a danger to Phillips, nor did the record suggest that the doctor knew he was prescribing less Depakote than was required. The Court went on to state that the fact Phillips disagreed with the doctor as to what should have been the proper anti-seizure drug did not establish deliberate indifference. *See Phillips*, 437 F.3d at 795.

The Court finds the *Phillips* case to be controlling. Giving Plaintiff the benefit of all reasonable inferences, Plaintiff's claims against Dr. Liggett, at best, make out a case for medical negligence. According to Plaintiff's testimony during his deposition, Dr. Liggett told him that he did not need Tegretol for his seizures and "took it away," even though Dr. Liggett knew Plaintiff

6

had been taking the drug previously. The Court cannot find any evidence Dr. Liggett knew that continuing Plaintiff's prescription for Topamax, without Tegretol, would present a danger to Plaintiff, nor is there evidence that Dr. Liggett knew he was prescribing less medication than was required to control Plaintiff's seizures. Based on the holding in *Phillips*, Plaintiff's disagreement with Dr. Liggett's treatment for his seizures does not establish deliberate indifference. *See Phillips*, 437 F.3d at 795.

### B. Official Capacity Claim

Although Dr. Liggett has not addressed the official capacity claim against him, the Court will rule upon it *sua sponte*. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Dr. Liggett are treated as claims against his employer.[3] *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Defendant's official capacity liability under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler*

---

[3] It is not clear from the record whether Dr. Liggett contracted with the ADC to provide services at the ORCU or if he was employed by a third party who contracted with the ADC.

*v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  Here, Plaintiff has not alleged any custom or policy of Dr. Liggett's employer that contributed to a violation of Plaintiff's civil rights.  Instead, Plaintiff has simply reiterated his individual capacity claims against Dr. Liggett.  Accordingly, Plaintiff's official capacity claim fails as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 52) is **GRANTED**.  Plaintiff's claims against Defendant, Dr. Charles Liggett, are **DISMISSED WITH PREJUDICE**.  A judgement of even date shall issue.

**IT IS SO ORDERED** this 31st day of May 2018.

*/s/ P. K. Holmes, III*
HON. P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE